# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**ROBERT G. ANDERSON, JR.,**

**Plaintiff,**

v.

**NANCY A. BERRYHILL,**[1] **Acting Commissioner of Social Security,**

**Defendant.**

**No. 17 C 0958**

**Magistrate Judge Mary M. Rowland**

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert G. Anderson, Jr. filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits (DIB), a claimant must establish that he or she is disabled within the meaning of the Act.[2] *York v. Massanari*, 155

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

[2] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq. The standard for determining DIB is virtually identical to that used for

F.Supp.2d 973, 977 (N.D. Ill. 2001). A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?

2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?

3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?

4. Is the claimant unable to perform his or her former occupation?

5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

Supplemental Security Income (SSI). *Craft v. Astrue*, 539 F.3d 668, 674 n. 6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

# II. PROCEDURAL HISTORY

Plaintiff protectively applied for DIB on September 4, 2012, alleging he became disabled on July 5, 2012. (R. at 205). This claim was denied initially and upon reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 102–105, 108–110, 112). On November 3, 3014, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 37–74). The ALJ also heard testimony from Robert Taub, M.D., a medical expert (ME), and James Breen, a vocational expert (VE). (*Id.* at 44–47, 67–72).

The ALJ issued a partially favorable decision on February 5, 2015 finding that Plaintiff became disabled on September 3, 2014. (R. at 17–36, 21). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff met the insured status requirement through December 31, 2018 and had not engaged in substantial gainful activity since his alleged onset date of June 28, 2012.[3] (*Id.* at 23). At step two, the ALJ found that since the alleged onset date of June 28, 2012, Plaintiff had the following severe impairments: hypertensive retinopathy; branch vein occlusion; status post-cataract excision and lens replacement, left eye; and chronic pulmonary obstructive disease. (*Id.*). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any listings enumerated in the regulations. (*Id.* at 24).

---

[3] Although certain records indicate that Plaintiff's alleged onset date was July 5, 2012, (R. 52, 75, 83, 205), the ALJ found that the alleged onset date is June 28, 2012 throughout his decision.

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[4] and determined that prior to September 3, 2014 Plaintiff had the RFC to perform a full range of work at all exertional levels subject to:

> Postural limitations of: occasionally climbing ladders, ropes, or scaffolds; and occasionally climbing ramps or stairs;
> Visual limitation of: no work requiring performance of small or intricate details due to limited depth perception; and
> Environmental limitations of: avoiding exposure to unprotected heights and dangerous moving machinery; and avoiding more than occasional exposure to dust and other environmental contaminants.

(R. at 26–28). Then the ALJ found that beginning on September 3, 2014, Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with additional non-exertional limitations:

> [Plaintiff] can occasionally lift a maximum of 10 pounds and frequently lift and carry less than 10 pounds. [He] can sit for about 6 hours out of an 8 hour workday and can walk or stand for about 2 hours out of an 8 hour workday. [He] can push and pull to include operation of hand or foot controls with bilateral upper and lower extremities as restricted by the limitations on lifting and carrying subject to . . .

(*Id.* at 28–29). The restrictions above were subject to the same postural, visual and environmental limitations as the prior September 3, 2014 RFC finding. (*Id.*).

The ALJ determined at step four that Plaintiff was unable to perform any past relevant work. (R. at 30). At step five, based on Plaintiff's RFC, his vocational factors, the ME and VE's testimony, the ALJ determined that prior to September 3, 2014, there were jobs that existed in significant numbers in the national economy

---

[4] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

that claimant could have performed including dishwasher, hand packager, and warehouse worker. (*Id.* at 31). The ALJ then determined that beginning on September 3, 2014, there were no jobs that Plaintiff could perform. (*Id.* at 32). Accordingly, the ALJ concluded that Plaintiff became disabled on September 3, 2014. (*Id.*).

The ALJ then amended her decision on August 31, 2015.[5] (R. at 7–10). The ALJ stated that her previous decision erroneously reflected a date last insured of December 31, 2018, which was based on a statutory blindness date last insured.[6] (*Id.* at 10). The ALJ found that a review of Plaintiff's certified earnings confirmed a date of last insured to be June 30, 2012 which means Plaintiff's date last insured expired prior to the establishment of disability.[7] (*Id.*). The ALJ stated that all references to the date last insured of December 31, 2018 were amended to reflect the proper date of June 30, 2012, but the remainder of the prior decision remained unchanged. (*Id.*).

On September 9, 2015 Plaintiff submitted a letter to the Appeals Council indicating his intent to appeal the ALJ's amended decision, and requesting an extension of time in order to submit a brief. (R. at 16). The Appeals Council granted his request for an extension. (R. at 11). On October 14, 2015, Plaintiff submitted a

---

[5] The first page of the amended decision is incorrectly dated August 31, 2016 in the record.

[6] The ALJ does not indicate how she determined that the statutory blindness date last insured does not apply to Plaintiff; nor does Plaintiff contest the ALJ's determination in this regard.

[7] An individual seeking DIB must first establish that he has attained disability insured status, and that he became disabled prior to the expiration of that status date. *See* 42 U.S.C §§ 423(a)(1)(A), 423(a)(1)(D), 423(c). If a claimant does not satisfy the disability insured status requirement, he or she will be ineligible for DIB. *See Id.*

brief to the Appeals Council in support of his Request for Review. (*Id.* at 287–89). Plaintiff attached and submitted as new and material evidence a report from Julian Freeman, M.D., opining that Plaintiff met Listing 12.02 since June 1, 2012. (*Id.* at 287). Plaintiff also attached a "DISCO DIB Insured Status Report"[8] and asserted that Plaintiff "may actually be insured through December 31, 2012." (*Id.* at 299, Exhibit B).

The Appeals Council denied Plaintiff's request for review on December 20, 2016. (R. at 1–6). Plaintiff now seeks judicial review of the ALJ's amended decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the Act. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision

---

[8] DISCO is an acronym for DIB Insured Status Computation Online.

if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

## IV. DISCUSSION

Plaintiff argues that the ALJ's decision requires remand pursuant to 42 U.S.C. § 405(g) sentence four because the ALJ (1) improperly assessed the medical opinion of an examining physician; (2) failed to consider objective medical evidence in evaluating the severity of his impairments; (3) improperly evaluated Plaintiff's

mental disorder; and (4) erroneously found that Plaintiff could work in an environment with eye irritants. (Pl.'s Mem., Dkt. 10 at 10-14). Plaintiff also argues that the ALJ's amended decision requires remand pursuant to 42 U.S.C. § 405(g) sentence six because the Appeals Council did not properly consider evidence submitted by Plaintiff that Plaintiff's Date Last Insured was December 31, 2012 and not June 30, 2012. (Pl.'s Mem., Dkt. 10 at 9–10).

## A. The ALJ's Improperly Evaluated the Examining Physician's Opinion

Plaintiff asserts that the ALJ failed to properly assess the opinion of examining physician, Mark Gillis, M.D. (Pl.'s Mem., Dkt. 10 at 13–14). Social Security regulations require the ALJ to evaluate every medical opinion received. 20 C.F.R. § 404.1527(c); *see Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013). Generally, an ALJ will "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 404.1527(c)(1). "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Unless a treating source's medical opinion is given controlling weight, the ALJ must weigh all medical opinions considering the following factors: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other

factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)–(6). The ALJ must then provide a "sound explanation" for the weight given each opinion. *Punzio v. Astrue,* 630 F.3d 704, 710 (7th Cir. 2011).

Here, there are no treating source opinions in the record; rather, there are only opinions from examining and consulting medical sources. As such, the ALJ is required to weigh each of these opinions utilizing the factors outlined in 20 C.F.R. § 404.1527(c)(1)–(6). Dr. Gillis examined Plaintiff on November 7, 2014, and completed a Medical Opinion Questionnaire on November 12, 2014. (R. 448–57). He diagnosed Plaintiff with labile hypertension, alcohol dependence in remission, ataxia, hyperlipidemia, vitreous hemorrhage, cataract, and anxiety. (*Id.* at 452). On the Medical Opinion Questionnaire, Dr. Gillis indicated that Plaintiff was limited to lifting or carrying no more than ten pounds, sitting and standing less than two hours in an eight hour workday, and that he would have to lie down multiple times a day due to fatigue. (*Id.* at 454). He opined that he could never twist, stoop, crouch, or climb stairs or ladders, and that he had to avoid concentrated exposure to extreme cold, heat, high humidity, fumes, odors, dusts, gases, perfumes, soldering fluxes, solvents/ cleansers and chemicals. (*Id.* at 455). He indicated that Plaintiff's symptoms have been present and consistent since at least 2012. (*Id.*).

The Court finds that the ALJ gave insufficient reasons to reject the opinion of Dr. Gillis. The only explanation the ALJ offered for giving Dr. Gillis' opinion "no weight" was that the limitations provided by him "were not supported by the complete record, including the findings obtained during the examination of the

claimant." (R. 30). However, the ALJ provides no explanation of *how* the the opinion of Dr. Gillis is not supported by the complete record or by the findings obtained during his examination of Plaintiff. *See Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (finding that the ALJ did not provide any explanation for his belief that the claimant's activities were inconsistent with the medical source opinion and his failure to do so constitutes error). Without such a logical bridge, the Court cannot trace the of the ALJ's reasoning.

Further, "[a]n ALJ may not selectively consider medical reports." *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2011). "[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion." *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014). The ALJ failed to address examination notes, test results and other record evidence cited by Dr. Gillis which were supportive of his opinion. In addition to examining Plaintiff and reviewing Plaintiff's contemporaneous laboratory findings, Dr. Gillis reviewed Plaintiff's results from a computerized tomography (CT) scan and a magnetic resonance imaging (MRI) conducted in 2012 and "approximately 50 pages of old records, including [power mobility device] PMD notes, opthamology notes, and reviewd 2 hospitalizations at St. Alexius Medical center on 7/5/12 for visual loss, and 8/23/12." (*Id.* at 449). Dr. Gillis pointed to instances where these records supported his findings when examining Plaintiff. For instance, Dr. Gillis noted that Plaintiff's 2012 hospitalizations and follow-up workup "revealed abnormal brain MRI with multiple lacunar infarcts and possible basal ganglia hemorrhage." (*Id.*). Further he

indicated that Plaintiff's ataxic gait is affecting his ability to ambulate, which he opinied is "most likely the result of multiple lacunar infarcts, possible alcohol cerebellar degeneration, peripheral neuropathy, or some combination." (*Id.* at 452). The Court finds that the ALJ failed to "sufficiently articulate his assessment of the evidence to assure us that he considered the important evidence and . . . to enable us to trace the path of his reasoning." *Scott*, 297 F.3d at 595 (citation omitted).

Moreover, as Plaintff correctly points out, nowhere in her opinion does the ALJ address objective evidence cited by Dr. Gillis, including Plaintiff's MRI and CT scan results conducted in 2012, that indicate that Plaintiff had cerebral infarcts and severe and diffuse white matter in both cerebral hemispheres of the brain. (*See* Pl.'s Mem., Dkt. 10 at 10–11; R. 317, 333, 344, 346–47). The ALJ's failure to address these objective findings was error. *See Moore*, 743 F.3d at 1123-24 ("[T]he ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it . . . By failing to even acknowledge that evidence, the ALJ deprived us of any means to assess the validity of the reasoning process."); *Goins v. Colvin*, 764 F.3d 677 (7th Cir. 2014) (finding error when the ALJ failed to properly consider MRI results).

Additionally, the ALJ failed to minimally address most of the enumerated factors provided in 20 C.F.R. § 404.1527. Specifically, the ALJ did not discuss the nature and extent of the examining relationship, the extent to which medical evidence supports the opinion,  the consistency of the opinion with his own examination notes and the entire record, or whether Dr. Gillis had a relevant

11

specialty. "[P]roper consideration of these factors may have caused the ALJ to accord greater weight to [Dr. Gillis'] opinions." *Campbell*, 627 F.3d at 308. Accordingly, remand is necessary for the ALJ to properly analyze and explain the weight to be afforded to the opinion of Dr. Gillis.

## B. Other Issues

Because the Court is remanding to reevaluate Dr. Gillis' opinion, the Court chooses not to address Plaintiff's other arguments at this time. However, on remand, after determining the weight to be given the examining physician's opinion, the ALJ shall then reevaluate Plaintiff's physical and mental impairments and RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and rulings. Further, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff can perform. Finally, upon remand, the ALJ should re-determine the date last insured, in light of the new evidence submitted by Plaintiff on October 14, 2015.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (Dkt. 10) is GRANTED. Defendant's Motion for Summary Judgment (Dkt. 11) is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this Opinion.

Dated: December 19, 2017     E N T E R:

_____

MARY M. ROWLAND
United States Magistrate Judge